**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

GULF STATES CONFERENCE OF
SEVENTH-DAY ADVENTISTS,
CARLOS SEBASTIAN, and
JACE ADDISON.                                    Plaintiffs


vs.                                    Case No.: 1:19-cv-541-HSO-JCG


CITY OF GULFPORT, MISSISSIPPI                          Defendant

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs Gulf States Conference of Seventh-day Adventists, Carlos Sebastian and Jace Addison, for their causes of action against Defendant, state as follows:

**INTRODUCTION**

1.   The City of Gulfport has enacted an ordinance that unconstitutionally restricts the protected right to exchange beliefs and religious principles within its city limits. The City impermissibly restricts all forms of door-to-door solicitation and the accompanying expression of ideas unless those wishing to engage in such religious, charitable, or other protected discourse first obtain a license from the City, disclose personal information, and pass an investigation and review. These provisions permit unfettered discretion by the City Clerk to deny an application for a license, and there is no meaningful appeals process through which an aggrieved speaker can seek relief. The provisions of the

ordinance are vague and unconstitutionally restrict protected religious, charitable, and other forms of speech. Moreover, the ordinance impermissibly discriminates between citizens of the state and non-citizens.

2.    Courts routinely have rejected similar governmental efforts that seek to impose these kinds of prior restraint on speech and religious activity that is afforded the highest levels of protection by the First Amendment. For these reasons, Plaintiffs seek a declaratory judgment that the Ordinance is unconstitutional both on its face and as applied to these Plaintiffs, and injunctive relief barring the City from enforcing this Ordinance.

3.    This action arises under the provisions of the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, and Article 3 of the Constitution of Mississippi.

## THE PARTIES

4.    The Gulf States Conference of Seventh-day Adventists ("Conference") is an unincorporated religious membership organization with 74 member churches, 14 Companies and an approximate total of 13,056 members located in the southeastern United States. The Conference is part of the Seventh-day Adventist Church and has been in existence for decades.

5.    Carlos Sebastian is a resident and domicile of the State of Alabama.  He is a member of the Cody Road Seventh-day Adventist Church in Mobile, Alabama, which is a member of the Gulf States Conference of Seventh-day Adventists.  He is the assistant publishing director for the Conference.  At all times material to this lawsuit, he participated in the Conference's Student Literature Missionary Program (the "Program") as a Literature Evangelist.

6.    Jace Addison is a resident and domicile of the State of Texas.  He participated in the Program in 2019 and will participate in the 2020 Program scheduled for the Summer of 2020.  He is a member of the Hico Seventh-day Adventist Company in Hico, Texas, which is part of the Texas Conference of Seventh-day Adventists. He plans to conduct missionary work in the City of Gulfport in the Summer of 2021.  At all times material to this lawsuit, he participated in the Program and is a Literature Evangelist.

7.    In July 2019, while participating in the 2019 Program in the City of Gulfport, Plaintiff Carlos Sebastian and Literature Evangelists with the Program were stopped by the Gulfport Police and advised that they were required to obtain a license in order to conduct their evangelism work.  Mr. Sebastian was further directed to contact Chief of Police Leonard Papania.

8.    Mr. Sebastian spoke with Chief Papania, who told Mr. Sebastian that a license was indeed required.  Chief Papania

-3-

further advised Mr. Sebastian not to return to Gulfport until Mr. Sebastian had received a license.

9.    As a result of this directive, Mr. Sebastian and other members of the Program ceased their missionary work in the City of Gulfport.

10.   The Conference, by and through the General Conference of Seventh-day Adventists, has attempted to resolve this dispute with the City of Gulfport, but those efforts have been utterly ignored by City officials.

11.   The Conference scheduled, planned, and made the necessary preparations for, engaging in constitutionally protected religious speech within the city limits of the City of Gulfport during the 2019 Program.   These plans included, but were not limited to, the transportation and housing of students in the vicinity of the City so that their evangelistic activities could be conducted within the City and surrounding area.   Despite these preparations undertaken in good faith, Plaintiffs' evangelistic activities were immediately suspended when it became evident that the City of Gulfport was interpreting and enforcing its laws to prohibit religious speech without a City-issued license.

12.   The Conference actively is in the process of scheduling, planning, and making the necessary preparations for, resuming its evangelism within the City of Gulfport during the 2021 Program. Plaintiff Carlos Sebastian and his colleagues, including Plaintiff

Jace Addison, stand ready, willing, and able to engage in religious speech once the impermissible "chill" on these efforts is removed.

13.  The City of Gulfport, Mississippi is a municipal corporation organized, existing, and operating under Mississippi law and located in Harrison County, Mississippi, with the capacity to sue and be sued in this name.  All actions by the City are actions taken under color of state law.

## JURISDICTION AND VENUE

14.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 1367(a).

15.  This Court has personal jurisdiction over the Defendant.

16.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

### The City's Solicitation Ordinance

17.  Chapter 5, Article IV, Division 2 of the Code of Ordinances of the City of Gulfport ("Ordinance") is entitled "Peddlers and Solicitors."  The Ordinance imposes restraints upon any individual or group engaged in expressive conduct, including door-to-door charitable or religious solicitations within the City of Gulfport.  A true and correct copy of the Ordinance is attached as Exhibit 1.

18.  As defined by the Ordinance, a "solicitor" is

any person, whether a resident of the city or not, traveling either by foot, wagon, automobile, or any other type of conveyance, from place to place, from house to house, or from street to street, taking or attempting to take orders, subscriptions, contributions, or who without necessarily having the intention of making a direct sale, distributes literature, pamphlets, handbills, or samples. Solicitors shall also include persons or organizations who solicit contributions for charitable, religious, educational, community, recreation or similar, nonprofit purposes which have qualified for exemption from federal income tax under Section 501(c) and (d) of the Internal Revenue Code. Charitable or nonprofit organizations which do not qualify for such exemption must have a local sponsor in order to solicit within the city. To qualify as a local sponsor, one (1) must be a resident of the city and have resided within the city for at least one (1) year.

(Ordinance Sec. 5-111.)

19.  The Ordinance requires that "any and all . . . solicitors shall apply for and be in receipt of a license before engaging in any activity in the city."  (Ordinance Sec. 5-113(a).)

20.  The only exception to this provision is for "any person or to any member of his immediate household going from place to place, person to person, house to house, or dealer to dealer and selling or offering to sell dairy, poultry, orchard or farm products raised, produced or grown by him or his immediate household in the city or seafood caught by him or his immediate household."  (Ordinance Sec. 5-112(a).)  This exception for a limited number of preferred speakers does not include Plaintiffs.

21.   The Ordinance provides that, in order to obtain the required license, a sworn application must filed with the City Clerk.  (Ordinance Sec. 5-114(a).)

22.   In order to obtain the required license, the Ordinance imposes significant disclosure obligations on persons who wish to speak on religious matters.  According to the Ordinance, a person applying for a license must disclose:

A.   The "[n]ame and description of the applicant" (Ordinance Sec. 5-114(1));

B.   The applicant's "[a]ddress, legal and local" (Ordinance Sec. 5-114(2));

C.   "A brief description of the nature of the business and the goods to be sold" (Ordinance Sec. 5-114(3));

D.   "If employed, the name and address of the employer, together with credentials establishing the exact relationship" (Ordinance Sec. 5-114(4));

E.   "If a vehicle is to be used, a description of the same, together with license number or other means of identification" (Ordinance Sec. 5-114(5));

F.   "A photograph of the applicant, taken within sixty (60) days immediately prior to the date of the filing of the application, which picture shall be two (2) inches by two (2) inches showing the head and shoulders of the applicant in a

clear and distinguishing manner" (Ordinance Sec. 5-114(6));and

    G.  "Evidence as to the good character and business responsibility of the applicant as will enable an investigator to properly evaluate such character and business responsibility." (Ordinance Sec. 5-114(7).)

23.  The scope of review by this unnamed and undesignated "investigator" is not specified, nor are any standards provided to limit the exercise of the "investigator['s]" discretion. What is more, the Ordinance does not set forth what kind of information or documentation properly can establish either of these required showings, and there is no information on the nature or kind of "evidence" related to "good character and business responsibility" that is required. (*See* Ordinance Sec. 5-114(7).

24.  The Ordinance imposes an automatic "five-day waiting period before out-of-town solicitors will be allowed to solicit within the City, in order that the police department may conduct an investigation into the character and background of the applicant." (Ordinance Sec. 5-113(c).) There is no "waiting period" for in-town solicitors. (*See* Ordinance Sec. 5-113.)

25.  The Ordinance also sets forth a license fee and bond requirement. (Ordinance Sec. 5-119(a).) Each solicitor is required to have a separate license. (Ordinance Sec. 5-119(a).) Although solicitation for an "eligible charitable, religious,

educational, community or similar nonprofit purpose" is not subject to a fee or bond, the term "eligible" is vague and not defined. (Ordinance Sec. 5-119(b).) The provision thus vests standardless discretion in City officials to determine whether a purpose is "eligible" for relief from the fee and bond requirement. (Ordinance Sec. 5-119(b). The license fee imposes an impermissible "tax" upon applicants before they may exercise their protected First Amendment rights within the City.

26. Even assuming an applicant fulfills the City's onerous disclosure requirements, the City Clerk retains the discretion to "deny the issuance of a license upon the determination that such activity would endanger the public health, welfare, and safety." (Ordinance Sec. 5-113(g).) There are no standards set forth in the Ordinance to limit the exercise of the City Clerk's discretion in deciding whether "such activity would endanger the public health, welfare, and safety." (Ordinance Sec. 5-1113(g).) The requirement that an applicant pass an entirely discretionary and standardless review process as a pre-condition for exercising the protected right to engage in religious speech violates the First Amendment.

27. Additionally, even if a license is granted, the Ordinance restricts the privilege of solicitation in residential areas "[o]nly to those persons who are citizens of the state, or who are agents of corporations domiciled in the state, or who are

agents of foreign corporations qualified to do business in the state." (Ordinance Sec. 5-113(f).) This provision unjustifiably and impermissibly discriminates against non-citizens.

28. The City Clerk also retains the discretion to revoke a license if the Clerk determines that a license holder fails to adhere to any of the provision of the Ordinance. (Ordinance Sec. 5-1209(c).) The Ordinance enumerates four reasons for which a license may be revoked, but does not state that this list is exhaustive, and nothing in the Ordinance states that these are the only bases on which a license may be revoked. (Ordinance Section 5-120.)

29. The Ordinance provides for appeal to the City Council regarding the denial or revocation of a license. (Ordinance Sec. 5-121.) However, the Ordinance does not specify the time period for a decision from the City Council, nor does it set forth any standards under which the appeal is to be decided. (Ordinance Sec. 5-121.)

30. By granting itself an unlimited amount of time to consider an appeal, the City has created an impermissible prior restraint on speech: a speaker effectively may be denied the right of religious speech through simple inaction by the City. The Ordinance does not contain any provision which would permit the protected religious speech to proceed if delays occasioned by the City's inaction and indecision were to occur, nor does it permit

the protected religious speech to proceed while the "appeal" is pending. (*See* Ordinance Sec. 5-121.) Moreover, the Ordinance does not require the City to bear the burden to obtain a judicial ruling if it seeks to prevent the speech from occurring. (*See* Ordinance Sec. 5-121.)

## The Religious Nature of the Canvassing Program

31. Each of the individual Plaintiffs is an observant member of the Seventh-day Adventist faith.

32. The Seventh-day Adventist faith is a conservative Protestant Christian faith. One of the primary tenets of the Seventh-day Adventist faith is to follow the "Great Commission" given by Jesus Christ to "spread the Gospel." *See* Matthew 28:19-20 ("Therefore, go and make disciples of all nations, baptizing them in the name of the Father and the Son and the Holy Spirit, and teaching them everything I have commanded you.").

33. One of the methods by which Plaintiffs, including the Gulf States Conference and its members, historically have communicated their religious views is through door-to-door witnessing, evangelism, and the distribution of literature about the Seventh-day Adventist faith to interested persons. Plaintiffs follow these traditional methods, and they will continue to follow these practices for the foreseeable future as an integral part of their faith.

34.   These evangelistic efforts involve such things as verbal testimonies about the acts and mercies of the God of the Bible, the redemption and salvation offered to humankind through Jesus Christ, offers of prayer and religious instruction and counseling to those who are willing to receive it, as well as an effort to distribute printed religious literature and to obtain a commitment from the persons so evangelized in the form of a voluntary financial contribution to demonstrate this commitment.

35.   Church members, such as the individual Plaintiffs, who participate in missionary efforts that involve the distribution of religious literature are recognized by the Seventh-day Adventist Church as "Literature Evangelists."   The literature that they distribute is the "seed" that is referred to in biblical parable of the sower.  *See* Matthew 13:3-8.

36.   Although not all who hear are receptive, the Conference and the individual Plaintiffs for some time have participated in evangelistic activities through the Program in the State of Mississippi.

37.   One of the locations in which the Plaintiffs actively seek to engage in missionary activities as Literature Evangelists for the Program is within the city limits of the City of Gulfport.

38.   The Conference will continue the Program this coming Spring and Summer, and in regular intervals thereafter for the foreseeable future.   Each of the Plaintiffs wishes to serve the

-12-

Church as a Literature Evangelist within the City of Gulfport during the upcoming 2021 Program, and each of them have taken concrete steps in order to make this happen with the Program.

39. As part of the Program, church members (typically college students) travel in teams to various locations during designated time periods both during the school year and the summer. In the instant case, the next year in which the Conference seeks to operate the Program in the City of Gulfport is 2021.

40. These teams generally consist of a leader/driver and other members who are divided into teams of several members.

41. During the Program, the teams travel to a pre-determined destination and witness door to door, offering literature about the Seventh-day Adventist faith to interested persons, engaging in verbal evangelism by sharing testimonies and religious information, offering prayer, religious instruction and counseling to persons who are willing to receive it, and seeking voluntary donations to help support the Program and further its evangelistic purpose.

42. Such requests for voluntary donations are integral to the religious message that is presented by Literature Evangelists. The simple act of making such a donation often is the first step toward the religious conversion of the hearer. This aspect of the evangelistic activities of the student missionaries is a

fundamental component for spreading the Seventh-day Adventist faith.

43.  The voluntary donations collected during the Literature Evangelism Program are divided between compensation paid to student Literature Evangelists and the Literature Evangelist team leaders, the cost of materials distributed during the Program, and other administrative expenses related to running the Program.

**The Actions Taken By The City**

44.  In July 2019, Literature Evangelists, including Plaintiff Carlos Sebastian, were scheduled to spend several days evangelizing under the Program in the City of Gulfport.

45.  On July 16, 2019, a City of Gulfport police offer confronted some of the Literature Evangelists, including Plaintiff Carlos Sebastian, and advised them that that they were prohibited from engaging in their missionary activities without first securing a license from the City.

46.  This officer directed the Literature Evangelists, including Plaintiff Carlos Sebastian, to speak with the City's Chief of Police, Leonard Papania.

47.  Plaintiff Carlos Sebastian spoke with Chief Papania on July 16, 2019, who advised Mr. Sebastian that a license was indeed required and that the Student Evangelists were not to return to Gulfport until they obtained a license.

48.    Chief  Papania  sent  a  copy  of  the  Ordinance  to  Mr.
Sebastian via e-mail, and advised Mr. Sebastian to send it to his
lawyer.

49.    On July 17, 2019, counsel for the General Conference of
Seventh-day Adventists sent a letter to Jeff Bruni, City Attorney,
in an attempt to resolve this matter.   The letter described the
nature and purpose of the Program and addressed the constitutional
defects with the Ordinance.

50.    The City ignored the letter and never responded.

51.    The General Conference of Seventh-day Adventists made
several  additional  attempts  to  follow  up  on  its  earlier  letter
with Mr. Bruni and pursue a resolution of these issues.   Neither
Mr. Bruni nor anyone else from the City ever responded to any of
these overtures.

52.    Based on Chief Papania's warning and reference to the
Ordinance  and  the  City's  failure  to  respond  to  Plaintiffs'
concerns, the City of Gulfport has made clear that it intends to
enforce its Ordinance against Plaintiffs' evangelistic activities
if they continue to engage in such activities, despite the fact
that they fall within the core of speech and religious liberty
protected by the First Amendment.

53.    As a direct and proximate result of the actions of the
City,  acting  through  its  officials,  the  Program  and  its
missionaries,  including  but  not  limited  to  the  Plaintiffs,

immediately suspended their plans to engage in evangelistic activities within the City and instead devoted their time and efforts to neighboring communities.

54. Because Plaintiffs ceased further evangelistic activities within the City of Gulfport following their encounter with City police, they were unable to continue their faith-based Program in the City of Gulfport and were denied their right to engage in religious speech protected by the First Amendment.

55. To-date, neither individual Plaintiff nor any member of the Conference has attempted to secure a license from the City under the terms of the Ordinance.

56. Applying for a license under the Ordinance would force Plaintiffs to comply with the Ordinance's significant disclosure obligations simply to engage in religious discourse. It would force Plaintiffs to submit to the standardless discretion of an unnamed "investigator" and will require Plaintiffs to endure an automatic waiting period before they can engage in evangelistic activities simply because Plaintiffs are not residents of the City and their activities may include a request for voluntary donations or contributions. And even if Plaintiffs did seek a license, such an exercise would be a futile gesture because the individual Plaintiffs are not citizens of the State of Mississippi, and thus are expressly prohibited from engaging in constitutionally

protected evangelistic activities in residential areas of the City.

57.  Unless and until the City of Gulfport's enforcement of its Ordinance is enjoined, Plaintiffs will be unable to witness to the citizens of the City in the Summer of 2021 and subsequent Programs.

**COUNT I**
**PRIOR RESTRAINT/PERMIT CLAIM**
**DEPRIVATION OF FREE SPEECH AND ASSOCIATIONAL RIGHTS**
**IN VIOLATION OF FEDERAL CONSTITUTION**

58.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 57 and all subparagraphs as if they were fully set forth herein.

59.  By prohibiting, constraining, conditioning, taxing and excessively limiting protected religious speech, the City of Gulfport is violating the free speech rights of Plaintiffs and Conference members protected and guaranteed by the First and Fourteenth Amendments of the United States Constitution.

60.  The denial of rights guaranteed by the First and Fourteenth Amendments by the City of Gulfport under color of law is actionable under 42 U.S.C. § 1983.

61.  The Ordinance is directed specifically at protected expression and conduct commonly associated with such expression, and imposes substantial burdens upon that protected expression.

62.   The Ordinance is overbroad and impermissibly limits religious discourse and speech.

63.   The Ordinance is unconstitutional both on its face and as applied to Plaintiffs' activities which involve only verbal evangelism, prayer and religious counseling, distribution of literature and requests for voluntary charitable donations.

64.   Because Plaintiffs are required to obtain the City of Gulfport's prior permission before engaging in constitutionally protected speech, the Ordinance is an unlawful prior restraint and is not narrowly tailored.

65.   The Ordinance unconstitutionally vests the City of Gulfport's agents with excessive, standardless discretion to investigate, deny and revoke licenses without adequate objective limitations or procedural safeguards.

66.   The Ordinance unconstitutionally grants the City of Gulfport's agents excessive, standardless discretion to investigate, deny, and revoke licenses without a meaningful provision for judicial or administrative review.  The Ordinance fails to contain any objective criteria or standards with which the City's agents must comply in their decision to approve or deny an application for a license or their decision to revoke or suspend a license, or their consideration of any appeals.  Moreover, in failing to set forth a time period for a decision on any appeal,

the "appeal" provision is meaningless and continues to restrict protected speech while the appeal is pending.

67.   The Ordinance restricts the privilege of solicitation in residential areas "[o]nly to those persons who are citizens of the state, or who are agents of corporations domiciled in the state, or who are agents of foreign corporations qualified to do business in the state."   (Ordinance Sec. 5-113(f).)

68. Solely because the individual Plaintiffs are not citizens of the State of Mississippi, they are expressly prohibited from engaging in constitutionally protected expression and conduct in residential areas of the City.

69.   The Ordinance violates the federal constitution and chills and substantially burdens protected speech by requiring individuals to disclose personal information and subject themselves to standardless review and investigation as a pre-condition for obtaining a license to speak on religious subjects simply because that speech may also include a request for voluntary donations or contributions.

70.   Through the enactment, enforcement, and threatened enforcement of the Ordinance, the City of Gulfport has, under color of state law, deprived and continues to deprive Plaintiffs and their members of rights, privileges or immunities guaranteed, secured and protected by the Constitution or laws of the United States, in violation of 42 U.S.C. § 1983.

71.    The injuries suffered by Plaintiffs cannot be fully compensated by monetary damages.  If enforcement of the Ordinance is not enjoined, Plaintiffs and Conference members will suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the chilling of their free speech rights.

**COUNT II**
**CIVIL RIGHTS CLAIM**
**DEPRIVATION OF FREEDOM OF RELIGION**
**IN VIOLATION OF FEDERAL CONSTITUTION**

72.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 71 and all subparagraphs as if they were fully set forth herein.

73.  The individual Plaintiffs are members of the Seventh-day Adventist Church.  They follow, and have a sincere religious belief in, the teachings, tenets, beliefs and doctrines of the Church.

74.  One of the primary doctrines of the Seventh-day Adventist faith is to follow the "Great Commission" given by Jesus Christ so "spread the Gospel."  *See* Matthew 28:18-20 ("Therefore go and make disciples of all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit, and teaching them to obey everything I have commanded you.")

75.  One of the methods by which the Plaintiffs and other members of the Seventh-day Adventist Church historically have

communicated their religious views is through door-to-door witnessing, evangelism, and the distribution of literature about the Seventh-day Adventist faith to interested persons.

76. Plaintiffs currently follow these traditional methods, and will continue to follow these practices for the foreseeable future as an integral part of their faith.

77. The City of Gulfport, through its Ordinance, has placed a substantial burden on Plaintiffs' ability to act on their sincerely-held religious beliefs. In particular:

A. The Ordinance violates the federal constitution and substantially burdens the free exercise of religion by requiring individuals to disclose personal information and subject themselves to standardless review and investigation as a pre-condition for obtaining a license to engage in evangelistic activities required by Plaintiffs' faith simply because those activities also may include a request for voluntary donations or contributions.

B. The Ordinance violates the federal constitution and substantially burdens the free exercise of religion by providing for the payment of a fee or "tax" as a condition of obtaining a license to engage in evangelistic activities required by Plaintiffs' faith simply because those activities also may include a request for voluntary donations or contributions. While the fee provision may be waived if the

purpose of the activity is "eligible," the City, through its agents, retains standardless discretion to determine what purposes are "eligible" with respect to this exemption.

C.    The Ordinance violates the federal constitution and substantially burdens the free exercise of religion by arbitrarily imposing an automatic waiting period before Plaintiffs can engage in evangelistic activities required by Plaintiffs' faith simply because Plaintiffs are not residents of the City of Gulfport and their activities may include a request for voluntary donations or contributions.

D.    The Ordinance restricts the privilege of solicitation in residential areas "[o]nly to those persons who are citizens of the state, or who are agents of corporations domiciled in the state, or who are agents of foreign corporations qualified to do business in the state." (Ordinance Sec. 5-113(f).)    Solely because the individual Plaintiffs are not citizens of the State of Mississippi, they are expressly prohibited from engaging in constitutionally protected evangelistic activities in residential areas of the City.

78. The Ordinance does not further a compelling state interest.

79.   By enacting the Ordinance, the City has not pursued a compelling government interest in the manner least restrictive, or least burdensome, to religion.

80.   Through the enactment, enforcement, and threatened enforcement of the Ordinance, the City of Gulfport has, under color of state law, deprived and continues to deprive Plaintiffs and their members of rights, privileges or immunities guaranteed, secured and protected by the Constitution or laws of the United States, in violation of 42 U.S.C. § 1983.

81.   The injuries suffered by Plaintiffs cannot be fully compensated by monetary damages.  If enforcement of the Ordinance is not enjoined, Plaintiffs and Conference members will suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the deprivation of their right to act on their sincerely-held religious beliefs.

**COUNT III**
**CIVIL RIGHTS CLAIM**
**DEPRIVATION OF EQUAL PROTECTION OF THE LAW**
**IN VIOLATION OF THE FEDERAL CONSTITUTION**

82.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 and all subparagraphs as if they were fully set forth herein.

83.   The Ordinance restricts the privilege of solicitation in residential areas "[o]nly to those persons who are citizens of the state, or who are agents of corporations domiciled in the state,

or who are agents of foreign corporations qualified to do business in the state." (Ordinance Sec. 5-113(f).)

84. Solely because the individual Plaintiffs are not citizens of the State of Mississippi, and thus are expressly prohibited from engaging in constitutionally protected evangelistic activities in residential areas of the City.

85. The City of Gulfport unlawfully discriminates between citizen and non-citizen license holders by arbitrarily restricting the areas in which non-citizen license holders may conduct their constitutionally protected activities.

86. Further, the Ordinance does not set forth any justification or governmental purpose for the discriminatory treatment.

87. Through the enactment, enforcement, and threatened enforcement of the Ordinance, the City of Gulfport has, under color of state law, deprived and continues to deprive Plaintiffs and their members of rights, privileges or immunities guaranteed, secured and protected by the Constitution or laws of the United States, in violation of 42 U.S.C. § 1983.

88. The injuries suffered by Plaintiffs cannot be fully compensated by monetary damages. If enforcement of the Ordinance is not enjoined, Plaintiffs and Conference members will suffer irreparable injury which cannot adequately be remedied at law,

including but not limited to, the deprivation of their right to
act on their sincerely-held religious beliefs.

**COUNT IV**
**CIVIL RIGHTS CLAIM**
**DEPRIVATION OF LIBERTY INTERESTS WITHOUT DUE PROCESS OF LAW**
**IN VIOLATION OF THE FEDERAL CONSTITUTION**

89.   Plaintiffs   reallege   and   incorporate   by   reference
paragraphs 1 through 88 and all subparagraphs as if they were fully
set forth herein.

90.   The Ordinance deprives Plaintiffs and Conference members
of their speech, religion and liberty interests without due process
of law in violation of the Fourteenth Amendment of the United
States Constitution.

91.   The Ordinance is void for vagueness.

92.   The Ordinance unconstitutionally vests the City of
Gulfport's agents with excessive, standardless discretion to
investigate, deny, and revoke licenses without adequate objective
limitations or procedural safeguards.

93.   The Ordinance unconstitutionally grants the City of
Gulfport's agents excessive, standardless discretion to
investigate, deny, and revoke licenses without a meaningful
provision for judicial or administrative review.  The Ordinance
fails to contain any objective criteria or standards with which
the City's agents must comply in their decision to approve or deny
an application for a license or their decision to revoke or suspend

a license, or their consideration of any appeals.  Moreover, in failing to set forth a time period for a decision on any appeal, the "appeal" provision is meaningless and continues to restrict protected speech while the appeal is pending.

94. Through the enactment, enforcement, and threatened enforcement of the Ordinance, the City of Gulfport has, under color of state law, deprived and continues to deprive Plaintiffs and Conference members of rights, privileges or immunities guaranteed, secured and protected by the Constitution or laws of the United States, in violation of 42 U.S.C. § 1983.

95. The injuries suffered by Plaintiffs cannot be fully compensated by monetary damages.  If enforcement of the Ordinance is not enjoined, Plaintiffs will suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the chilling of their free speech rights and rights to the free exercise of their religion.

**COUNT V**
**STATE LAW CLAIM**
**DEPRIVATION OF PLAINTIFFS' EXERCISE OF RELIGION**
**IN VIOLATION OF THE MISSISSIPPI CONSTITUTION**

96. Plaintiffs reallege and incorporate by reference paragraphs 1 through 95 and all subparagraphs as if they were fully set forth herein.

97. As set forth in Mississippi Constitution, Article 3, Section 18, "no preference shall be given by law to any religious

-26-

sect or mode of worship; but the free enjoyment of all religious sentiments and the different modes of worship shall be held sacred."

98. The individual Plaintiffs are members of the Seventh-day Adventist Church.  They follow, and have a sincere religious belief in, the teachings, tenets, beliefs and doctrines of the Church.

99. One of the primary doctrines of the Seventh-day Adventist faith is to follow the "Great Commission" given by Jesus Christ so "spread the Gospel."  *See* Matthew 28:18-20 ("Therefore go and make disciples of all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit, and teaching them to obey everything I have commanded you.")

100. One of the methods by which the Plaintiffs, including the individual Plaintiffs and other members of the Seventh-day Adventist Church, historically have exercised their religion is to communicate their religious views through door-to-door witnessing, evangelism, and the distribution of literature about the Seventh-day Adventist faith to interested persons.

101. Plaintiffs currently follow these traditional methods, and will continue to follow these practices for the foreseeable future as an integral part of their faith.

102. The City of Gulfport, through its Ordinance, substantially burdened Plaintiffs' exercise of their religion

including their ability to act on their sincerely-held religious beliefs.  In particular:

A.    The Ordinance violates the Mississippi Constitution, Article 3, Section 18 and substantially burdens the free exercise of religion by requiring individuals to disclose personal information and subject themselves to standardless review and investigation as a pre-condition for obtaining a license to engage in evangelistic activities required by Plaintiffs' faith simply because those activities also may include a request for voluntary donations or contributions.

B.    The Ordinance violates the Mississippi Constitution, Article 3, Section 18 and substantially burdens the free exercise of religion by providing for the payment of a fee or "tax" as a condition of obtaining a license to engage in evangelistic activities required by Plaintiffs' faith simply because those activities also may include a request for voluntary donations or contributions.  While the fee provision may be waived if the purpose of the activity is "eligible," the City, through its agents, retains standardless discretion to determine what purposes are "eligible" with respect to this exemption.

C.    The Ordinance violates the federal constitution and substantially burdens the free exercise of religion by

arbitrarily imposing an automatic waiting period before Plaintiffs can engage in evangelistic activities required by Plaintiffs' faith simply because Plaintiffs are not residents of the City of Gulfport and their activities also may include a request for voluntary donations or contributions.

103. The Ordinance does not further a compelling governmental interest.

104. By enacting the Ordinance, the City has not pursued a compelling government interest in the manner least restrictive to religion.

105. Through the enactment, enforcement, and threatened enforcement of the Ordinance, the City of Gulfport has substantially burdened, and continues substantially to burden, the exercise of religion by Plaintiffs, including Plaintiff Gulf States Conference of Seventh-day Adventists, its members, and the individual Plaintiffs, protected by the Mississippi Constitution, Article 3, Section 18.

106. The injuries suffered by Plaintiffs cannot fully be compensated by monetary damages. If enforcement of the Ordinance is not enjoined, Plaintiffs, the Conference and its members will suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the deprivation of their right to act on their sincerely-held religious beliefs.

107.

### <u>PRAYER FOR RELIEF</u>

Plaintiffs request that the Court enter a judgment in their favor and against Defendant City of Gulfport for the following:

1.    Declaratory relief that the Ordinance is unconstitutional both on its face and as applied to these Plaintiffs;

2.    Permanent injunctive relief, enjoining Defendant, its employees, officers, agents and persons acting on its behalf, from enforcing or threatening to enforce the Ordinance;

3.    Nominal damages of $1.00 to each Plaintiff;

5.    Reasonable attorneys' fees and costs of suit under 42 U.S.C. § 1988 or such other authority as may authorize such an action; and

6.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/JONATHAN B. FAIRBANK
MSB NO.: 5119
P.O. BOX 13276
Jackson, MS. 39236-3276
Telephone: (601) 956-899
Facsimile: (601) 957-9779
E-Mail: jonfairbanklaw@gmail.com


Applying for *Pro Hac Vice* Admission:
RODEY, DICKASON, SLOAN, AKIN &
ROBB, P.Andrew G. Schultz
P.O. Box 1888
Albuquerque, NM    87103
Telephone:    (505) 765-5900
Facsimile:    (505) 768-7395
E-mail:       aschultz@rodey.com

Todd R. McFarland
Associate General Counsel
Office of General Counsel
General Conference of Seventh-day Adventists
12501 Old Columbia Pike
Silver Spring, MD    20904-6600
Telephone:    (301) 680-6321
Facsimile:    (301) 680-6329
E-mail:       mcfarlandt@adventist.org

*Attorneys for Plaintiffs Gulf States Conference of Seventh-day Adventists, Carlos Sebastian, and Jace Addison*